

FILED

CASE UNSEALED PER ORDER OF COURT

2016 JUL 22  PM 4: 10

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

March 2015 Grand Jury

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

SANDERS BRUCE SEGAL (1),
    aka Sandy,
STANLEY SAMUEL PENN (2),
    aka Stan,
PETTER MAGNUS KARLSSON (3),
    aka Magnus,
DAVID GREG LEPPO (4),
PABLO BALLESTERO FRECH (5),
    aka Pab,
SYDNEY BRUCE SEGAL (6),
    aka Syd,
JOSEPH EDWARD SPATAFORE (7),
    aka Joe,
MINH TRIET DINH NGUYEN (8),
    aka Minh,
JAMES HANG TEAR (9),
KEN PHENG KEO (10),
JASON D. TAYLOR (11),
    aka Kentucky,
JEFFREY ALAN BURKE (12),
    aka Jeff,

          Defendants.

Case No. '16CR 1695 BEN

I N D I C T M E N T

Title 18, U.S.C., Sec. 1962(d) —
Racketeering Conspiracy to Conduct
Enterprise Affairs (RICO
Conspiracy); Title 18, U.S.C.,
Sec. 1955 — Illegal Gambling
Business; Title 18, U.S.C.,
Sec. 1084(a) — Transmission of
Wagering Information; Title 18,
U.S.C., Secs. 981(a)(1)(C),
1955(d), and 1963, and Title 28,
U.S.C., Sec. 2461(c) — Criminal
Forfeiture

The grand jury charges:

## Count 1

### (RACKETEERING CONSPIRACY - 18 U.S.C. § 1962(d))

#### THE ENTERPRISE

    1.   At all times material to this Indictment:

NWP:nlv:San Diego
7/22/16

1         a.   Defendants SANDERS BRUCE SEGAL (1), aka Sandy, STANLEY

2   SAMUEL PENN (2), aka Stan, PETTER MAGNUS KARLSSON (3), aka Magnus,

3   DAVID GREG LEPPO (4), PABLO BALLESTERO FRECH (5), aka Pab, SYDNEY

4   BRUCE SEGAL (6), aka Syd, and others constituted an "enterprise," as

5   defined by Title 18, United States Code, Section 1961(4) (hereinafter

6   collectively referred to as "SEGAL'S LUCKY LADY SPORTS BOOK"), that

7   is, a group of individuals associated in fact.

8         b.   SEGAL'S LUCKY LADY SPORTS BOOK was engaged in, and its

9   activities affected, interstate and foreign commerce.

10        c.   SEGAL'S LUCKY LADY SPORTS BOOK constituted an ongoing

11  organization, whose members functioned as a continuing unit, for the

12  common purpose of achieving the objectives of SEGAL'S LUCKY LADY

13  SPORTS BOOK.

14                 **OBJECTIVES OF THE ENTERPRISE**

15     2.   The objectives of SEGAL'S LUCKY LADY SPORTS BOOK included

16  the following:

17        a.   Enriching its leaders, members, and associates through

18  illegal gambling activity consisting primarily of bookmaking;

19        b.   Avoiding detection of its illicit conduct by, among

20  other things, conducting much of the enterprise's business from inside

21  the lawful, regulated gambling premises at the Lucky Lady Card Room,

22  and by laundering its illegal proceeds;

23        c.   Evading law enforcement by, among other things,

24  connecting bookies, sub-bookies, and significant bettors to access-

25  controlled sports gambling websites with servers primarily located

26  outside the United States, including certain websites owned and

27  controlled by members of the enterprise; and

28

1         d.   Enhancing its power and financial profits by promoting

2 SEGAL'S LUCKY LADY SPORTS BOOK activities with customers and potential

3 customers.

4                   **ORGANIZATIONAL STRUCTURE AND ROLES**

5     3.   At all times material to this Indictment, SEGAL'S LUCKY LADY

6 SPORTS BOOK had the following organizational structure, with various

7 members, employees, and associates occupying the following roles:

8                   **The Legitimate Front Business**

9         a.   The Lucky Lady Card Room (hereinafter "Lucky Lady") was

10 a registered gambling premises operating in San Diego, California,

11 offering patrons the opportunity to participate in selected lawful,

12 tightly regulated card games.  The Lucky Lady was wholly owned by sole

13 proprietor defendant STANLEY SAMUEL PENN, aka Stan, (PENN) who held a

14 personal, non-transferable license to operate the facility.  Although

15 the card games hosted at the Lucky Lady were lawful and regulated, as

16 described below, PENN's close friend and associate defendant SANDERS

17 BRUCE SEGAL, aka Sandy, (SEGAL) personally supervised and conducted

18 illegal bookmaking operations from inside the Lucky Lady.

19                   **Leaders and Managers**

20         b.   The principal leader of SEGAL'S LUCKY LADY SPORTS BOOK

21 was defendant SEGAL; in addition to personal bookmaking, SEGAL was

22 responsible for administering bookies and sub-bookies, authorizing and

23 providing access to the "cage" at the Lucky Lady and to PENN, and

24 providing a link between his San Diego-based bookies and sub-bookies,

25 on the one hand, and the enterprise's stable of international web-

26 based sports gambling platforms, on the other.

27         c.   PENN authorized SEGAL to routinely operate SEGAL'S

28 LUCKY LADY SPORTS BOOK in the Lucky Lady, in violation of the claimed

1   policy of the Lucky Lady, and attempted to conceal SEGAL's illegal
2   activities from the regulatory authorities.   In addition, PENN
3   received from and delivered to SEGAL large sums of cash used to
4   operate and fund the enterprise.

5         d.   SYDNEY BRUCE SEGAL, SANDERS SEGAL's son, managed the
6   "cage" at the Lucky Lady, where cash from the card room's lawful
7   gambling was held alongside proceeds of the unlawful sports betting
8   coordinated by SEGAL'S LUCKY LADY SPORTS BOOK, including in a separate
9   receptacle or fund referred to as the "blue bag." SYDNEY SEGAL's role
10  was to supervise the cage, accept and distribute the enterprise's cash
11  held at the cage, and maintain records of the winning and losing bets
12  of the bookmaking.

### International Supervisors

13

14        e.   SEGAL'S LUCKY LADY SPORTS BOOK also depended upon the
15  collaboration of international businessmen defendants PETTER MAGNUS
16  KARLSSON, aka Magnus, (KARLSSON) PABLO BALLESTERO FRECH, aka Pab,
17  (FRECH), and DAVID GREG LEPPO (LEPPO).   KARLSSON financed SEGAL'S
18  LUCKY LADY SPORTS BOOK and partnered with LEPPO to provide an avenue
19  for United States customers to illegally place bets on sports gambling
20  websites.   LEPPO owned and operated several sports gambling websites,
21  which were hosted outside of the United States to avoid detection and
22  disruption from United States law enforcement.   The conspirators used
23  these websites to provide readily accessible betting platforms, odds,
24  and other wagering information to customers of SEGAL'S LUCKY LADY
25  SPORTS BOOK.   KARLSSON employed FRECH to, among other things, manage
26  bets placed by and through SANDERS BRUCE SEGAL and his betting
27  customers on sports gambling websites. KARLSSON and LEPPO also met
28  personally with SEGAL and others in order to transfer cash generated

1   by the illegal bookmaking operation and coordinate the affairs of the
2   enterprise.

### Bookies

4          f.    SEGAL'S LUCKY LADY SPORTS BOOK had various bookmakers
5   ("bookies"), such as defendant MINH TRIET DINH NGUYEN, aka Minh (who
6   operated out of the Lucky Lady as well as other card rooms in the
7   Southern District of California) and defendant KEN PHENG KEO.  Bookie
8   defendant JASON D. TAYLOR, aka Kentucky, also associated with the
9   enterprise both by taking bets from high-stakes bettors such as
10  defendant JOSEPH EDWARD SPATAFORE, aka Joe, and by using the mails to
11  send to and receive from defendant SANDERS BRUCE SEGAL, aka Sandy, the
12  proceeds of illegal bookmaking.  Additionally, defendant SANDERS BRUCE
13  SEGAL, aka Sandy, personally acted as a bookmaker, taking bets from
14  select clients and placing them with sites provided by KARLSSON,
15  FRECH, LEPPO and others.

### Sub-Bookies

17         g.    SEGAL'S LUCKY LADY SPORTS BOOK had various sub-
18  bookmakers ("sub-bookies"), including defendants JAMES HANG TEAR, and
19  JEFFREY ALAN BURKE, aka Jeff, both of whom operated out of the Lucky
20  Lady.  Each sub-bookie was responsible for his own "package," which
21  referred to all the customer accounts managed by that sub-bookie.
22  Sub-bookies recruited customers, paid off winning bets, collected on
23  losing bets, and delivered payments to their managing bookie.  Sub-
24  bookies would also refer customers to other bookies in the enterprise
25  when a particular customer wished to place a larger bet than the sub-
26  bookie could accommodate.

27

28

### Bettor-Bookies

h.   SEGAL'S LUCKY LADY SPORTS BOOK also permitted certain significant bettors (sometimes known as "Wise Guy Bettors") to function as bookies or sub-bookies themselves, including defendant JOSEPH SPATAFORE, aka Joe.  These bettor-bookies, because of the size of their bets and their trusted status, would be permitted by the enterprise to collect and place bets for other bettors, and would sometimes be granted direct access to the access-controlled international gambling websites used by the enterprise.

### Runners

i.   SEGAL'S LUCKY LADY SPORTS BOOK used "runners" to transport profits and proceeds, although several of the runners used by the enterprise were also associated with different, distinct bookmaking operations.

### The Conspiracy

4.   Beginning at least as early as December 16, 2005 and continuing up to and including July 22, 2016, within the Southern District of California and elsewhere, defendants SANDERS BRUCE SEGAL (1), aka Sandy, STANLEY SAMUEL PENN (2), aka Stan, PETTER MAGNUS KARLSSON (3), aka Magnus, DAVID GREG LEPPO (4), PABLO BALLESTERO FRECH (5), aka Pab, SYDNEY BRUCE SEGAL (6), aka Syd, and others, being persons employed by and associated with SEGAL'S LUCKY LADY SPORTS BOOK, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of SEGAL'S LUCKY LADY SPORTS BOOK through a pattern of

1  racketeering activity, as set forth below, and through the collection

2  of unlawful debt, as set forth below.

3       a.   The pattern of racketeering activity through which the

4  defendants agreed to conduct and participate in the conduct of the

5  affairs of the enterprise, as that phrase is defined by Title 18,

6  United States Code, Sections 1961(1) and (5), consisted of multiple

7  acts involving gambling, chargeable under Cal. Penal Code § 337a

8  (bookmaking), which is punishable by imprisonment for more than one

9  year, and multiple acts indictable under the following provisions of

10 Title 18, United States Code:

11       i.   Title 18, United States Code, Section 1084

12 (transmission of wagering information);

13       ii.  Title 18, United States Code, Section 1952 (Travel

14 Act/phone and Internet use in aid of racketeering enterprises); and

15       iii. Title 18, United States Code, Section 1955

16 (illegal gambling business).

17 It was a part of the conspiracy that each defendant agreed that a

18 conspirator would commit at least two acts of racketeering activity in

19 the conduct of the affairs of SEGAL'S LUCKY LADY SPORTS BOOK.

20       b.   The collection of unlawful debt, as that phrase is

21 defined by Title 18, United States Code, Section 1961(6), through

22 which the defendants agreed to conduct and participate in the conduct

23 of the affairs of the enterprise, consisted of collection of debts

24 incurred and contracted in gambling activity which was in violation of

25 the law of the United States and the law of the State of California

26 and which was incurred in connection with the business of gambling in

27 violation of the law of the United States and the law of the State of

28 California.   It was a part of the conspiracy that each defendant

1  agreed that a conspirator would commit at least one collection of
2  unlawful debt in the conduct of the affairs of SEGAL'S LUCKY LADY
3  SPORTS BOOK.

4  **METHODS AND MEANS OF THE RACKETEERING CONSPIRACY**

5      5.    In   furtherance   of   the   racketeering   conspiracy,   the
6  conspirators utilized the following methods and means, among others:

7          a.    Bookies   and   sub-bookies   recruited   customers   in   the
8  Southern District of California and elsewhere.  They provided betting
9  odds to those customers, took customers' bets, placed those bets on
10 sports gambling websites, including websites provided by members of
11 the enterprise through the bookies' own personal accounts, and set up
12 individual website accounts for significant customers to facilitate
13 direct placement of unlawful wagers.

14         b.    SEGAL'S   LUCKY   LADY   SPORTS   BOOK   required   advance
15 deposits from certain new bettors to begin placing wagers; in other
16 cases, the enterprise extended credit to new customers, so they could
17 begin  sports  betting  without  pre-funding  their  accounts.    The
18 enterprise also provided further extensions of credit to existing
19 customers, so that those customers could wager larger amounts of money
20 than their prior extensions of credit allowed.

21         c.    When a bettor-bookie owed a large sum to one of the
22 enterprise's bookies, but was himself owed a large sum by another of
23 the enterprise's bookies, SEGAL'S LUCKY LADY SPORTS BOOK sometimes
24 arranged for the two bookies to transfer cash between themselves to
25 reconcile the accounts.

26         d.    SEGAL'S LUCKY LADY SPORTS BOOK collected debts owed by
27 customers  in  person,  through  bookies  and  sub-bookies,  at  various
28 locations  including  the  Lucky  Lady,  as  well  as  through  deposits  to

1  bank accounts controlled by bookies, and held cash constituting such

2  payments in various locations including the Lucky Lady cage.

3       e.   To further its objectives of evading law enforcement

4  and enriching its members, employees, and associates, SEGAL'S LUCKY

5  LADY SPORTS BOOK utilized sports gambling websites whose servers,

6  customer support centers, and business offices were located outside of

7  the United States, including locations in Costa Rica, the United

8  Kingdom, Hong Kong and Curacao.

9       f.   SEGAL'S LUCKY LADY SPORTS BOOK used numerous facilities

10  in interstate and foreign commerce, such as telephones, the mails and

11  Internet websites to facilitate its illegal bookmaking and gambling

12  activities.

13       g.   To sustain the enterprise and its base of operations

14  from the Lucky Lady Card Room, members of the enterprise explored ways

15  to circumvent or change San Diego regulations limiting the card room's

16  ability to operate in the event of PENN's retirement or death.

17  All in violation of Title 18, United States Code, Section 1962(d)

18                                        **Count 2**

19                           **(ILLEGAL GAMBLING BUSINESS)**

20      6.   Beginning on a date unknown but at least as early as

21  December 16, 2005, and continuing up to and including July 22, 2016,

22  within the Southern District of California and elsewhere, defendants

23  SANDERS BRUCE SEGAL (1), aka Sandy, STANLEY SAMUEL PENN (2), aka Stan,

24  PETTER MAGNUS KARLSSON (3), aka Magnus, DAVID GREG LEPPO (4), PABLO

25  BALLESTERO FRECH (5), aka Pab, SYDNEY BRUCE SEGAL (6), aka Syd, JOSEPH

26  EDWARD SPATAFORE (7), aka Joe, MINH TRIET DINH NGUYEN (8), aka Minh,

27  JAMES HANG TEAR (9), KEN PHENG KEO (10), JASON D. TAYLOR (11), aka

28  Kentucky, and JEFFREY ALAN BURKE (12), aka Jeff, knowingly and

1  intentionally conducted, financed, managed, supervised, directed, and
2  owned all and part of  an illegal gambling business involving sports
3  bookmaking, which gambling business was a violation of the law of the
4  State of California in which it was conducted (that is, in violation
5  of California Penal Code, Section 337a), and which involved at least
6  five persons who conducted, financed, managed, supervised, directed,
7  and owned all and part of the illegal gambling business, and which
8  remained in substantially continuous operation for a period in excess
9  of thirty days and had a gross revenue of at least $2,000 in any
10 single   day;   in   violation   of   Title   18,   United   States   Code,
11 Section 1955.

### Count 3

**(TRANSMISSION OF WAGERING INFORMATION)**

14     7.   On or about July 29, 2015, within the Southern District of
15 California, and elsewhere, defendants JOSEPH EDWARD SPATAFORE (7), aka
16 Joe, (SPATAFORE) and JASON D. TAYLOR (11), (TAYLOR) aka Kentucky,
17 being engaged in the business of betting and wagering, knowingly used,
18 aided and abetted the use of, and willfully caused the use of a wire
19 communication facility for the transmission in interstate and foreign
20 commerce, between the State of California and other states, of bets
21 and wagers and information assisting in the placing of bets and wagers
22 on a sporting event and contest, and for the transmission of a wire
23 communication which entitled the recipient to receive money and credit
24 as a result of bets and wagers and for information assisting in the
25 placing of bets and wagers on a sporting event and contest, to wit,
26 defendant SPATAFORE sent defendant TAYLOR a message by phone, asking
27 TAYLOR "Can I bet 3k to win on the eight in the last race at Del Mar?"
28 and TAYLOR responded by phone "Okay, number eight - I got it boss!

1  Take care"; in violation of Title 18, United States Code,
2  Section 1084(a).

3  **FORFEITURE ALLEGATIONS**

4  **(RACKETEERING CONSPIRACY FORFEITURE)**

5      8.   The allegations contained in Count 1 are realleged and
6  incorporated herein for the purpose of alleging forfeiture to the
7  United States of America under Title 18, United States Code,
8  Section 1963.

9      9.   Upon conviction of the offense set forth in Count 1, and
10  pursuant to Title 18, United States Code Section 1963 and Rule 32.2 of
11  the Federal Rules of Criminal Procedure, defendants SANDERS BRUCE
12  SEGAL (1), aka Sandy, STANLEY SAMUEL PENN (2), aka Stan, PETTER MAGNUS
13  KARLSSON (3), aka Magnus, DAVID GREG LEPPO (4), PABLO BALLESTERO FRECH
14  (5), aka Pab, SYDNEY BRUCE SEGAL (6), aka Syd shall forfeit to the
15  United States all rights, title and interest in:

16      a.   Interests acquired and maintained in violation of
17  Title 18, United States Code, Section 1962;

18      b.   any interest in, security of, claims against, and
19  property and contractual rights affording a source of influence over,
20  SEGAL'S LUCKY LADY SPORTS BOOK, which the defendants established,
21  operated, controlled, conducted, and participated in the conduct of;
22  and

23      c.   any property constituting and derived from any proceeds
24  obtained, directly and indirectly, from racketeering activity and
25  unlawful debt collection, in violation of Title 18, United States
26  Code, Section 1962.

27

28

1    The properties subject to forfeiture to the United States
2 pursuant to this section include, but are not limited to, a money
3 judgment in an amount not less than $960,000.00.
4 All pursuant to Title 18, United States Code, Sections 1963(a)(1),
5 (a)(2), and (a)(3).
6    10.  If any of the above-described forfeitable property, as a
7 result of any act or omission of said defendants —
8         a.   cannot be located upon the exercise of due diligence;
9         b.   has been transferred or sold to, or deposited with, a
10 third party;
11         c.   has been placed beyond the jurisdiction of the Court;
12         d.   has been substantially diminished in value; or
13         e.   has been commingled with other property which cannot be
14 subdivided without difficulty;
15 it is the intent of the United States, pursuant to Title 18, United
16 States Code, Section 1963(m), to seek forfeiture of any other property
17 of said defendants up to the value of the property listed above as
18 being subject to forfeiture.
19    11.  Said defendants, and each of them, are jointly and severally
20 liable for the forfeiture obligations as alleged above.
21 All pursuant to Title 18, United States Code, Section 1963.
22    **(ILLEGAL GAMBLING /TRANSMITTING WAGERING INFORMATION FORFEITURE)**
23    12.  The allegations contained in Counts 2 and 3 are realleged
24 and incorporated herein for the purpose of alleging forfeiture to the
25 United States of America under Title 18, United States Code,
26 Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code,
27 Section 2461(c).
28

13.   Upon conviction of the offense alleged in Count 2, and pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), Title 28, United States Code, Section 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure, defendants SANDERS BRUCE SEGAL (1), aka Sandy, STANLEY SAMUEL PENN (2), aka Stan, PETTER MAGNUS KARLSSON (3), aka Magnus, DAVID GREG LEPPO (4), PABLO BALLESTERO FRECH (5), aka Pab, SYDNEY BRUCE SEGAL (6), aka Syd, JOSEPH EDWARD SPATAFORE (7), aka Joe, MINH TRIET DINH NGUYEN (8), aka Minh, JAMES HANG TEAR (9), KEN PHENG KEO (10), JASON D. TAYLOR (11), aka Kentucky, and JEFFREY ALAN BURKE (12), aka Jeff, shall forfeit to the United States all rights, title and interest in:

a.   Any property, real and personal, which constitutes and is derived from proceeds traceable to the violation; and

b.   Any property, including money, used in violation of Title 18, United States Code, Section 1955.

The properties subject to forfeiture to the United States pursuant to this section include, but are not limited to:

- a money judgment in an amount not less than $984,000.00; and
- Wells Fargo bank account 3270371341.

14.   Upon conviction of the offense alleged in Count 3, and pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c) and Rule 32.2 of the Federal Rules of Criminal Procedure, defendants JOSEPH EDWARD SPATAFORE (7), aka Joe, and JASON D. TAYLOR (11) shall forfeit to the United States any property, real or personal, which constitutes or was derived from proceeds traceable to such violation, including but not limited to the sum of $61,000.00.

1    15. If any of the above-described forfeitable property, as a

2 result of any act or omission of said defendants —

3            a.    cannot be located upon the exercise of due diligence;

4            b.    has been transferred or sold to, or deposited with, a

5 third party;

6            c.    has been placed beyond the jurisdiction of the Court;

7            d.    has been substantially diminished in value; or

8            e.    has been commingled with other property which cannot be

9 subdivided without difficulty; it is the intent of the United States,

10 pursuant to Title 28, United States Code, Section 2461(c),

11 incorporating Title 21, United States Code, Section 853(p), to seek

12 forfeiture of any other property of said defendants up to the value of

13 the property listed above as being subject to forfeiture.

14 All pursuant to Title 18, United States Code, Sections 981(a)(1)(C),

15 1955(d), and 1963, and Title 28, United States Code, Section 2461(c).

16            DATED:  July 22, 2016.

17                                          A TRUE BILL:

18

19 LAURA E. DUFFY                           Foreperson
   United States Attorney
20

21 By:

22    JEFFREY D. HILL
      Special Asst. U.S. Attorney
23

24 By:

25    NICHOLAS W. PILCHAK
      Assistant U.S. Attorney
26

27

28

                                14